IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| PAUL SEPEDA #845427 | § | |
| v. | § | CIVIL ACTION NO. 6:12cv738 |
| BRAD LIVINGSTON, ET AL. | § | |

MEMORANDUM OPINION AND ORDER OF DISMISSAL

The Plaintiff Paul Sepeda, proceeding *pro se*, filed this civil rights lawsuit under 42 U.S.C. §1983 complaining of alleged violations of his constitutional rights. The parties have consented to allow the undersigned United States Magistrate Judge to enter final judgment in the proceeding pursuant to 28 U.S.C. §636(c). The named defendants are Brad Livingston, the Director of the Texas Department of Criminal Justice, Correctional Institutions Division; Dr. Michael Hanley; physician's assistants John Nolen, Michelle Lastrapes, and Kim Kannenberg; nurse Sarah Pierson; and Coffield Unit medical administrator Pam Pace.

In his complaint and at an evidentiary hearing, Sepeda says that toward the end of 2010, he started having problems because he was assigned to the top bunk in his cell, which he says is about five feet off the ground. He had no way to get down other than to jump, and he is 52 years old and overweight. This caused him to suffer pains in his feet; Sepeda states that he had a previous injury to his right leg caused by a bite from a police dog.

When he filed a sick call request, Sepeda says that he saw Dr. Michael Hanley, who "examined" him from about four feet away, without touching his leg or feet. Dr. Hanley did not request X-rays, but simply prescribed ibuprofen 800 mg. The doctor also did nothing to relieve Sepeda from the hazardous condition of having to get down from the top bunk.

He placed another sick call request and again saw Dr. Hanley, and the previous routine was repeated. This visit was on November 14, 2010. The doctor asked him about the pain and Sepeda

1

replied that the pain persisted and had intensified in his left foot, and worsened when he walked or stood for long periods. Dr. Hanley again did not physically examine him or order X-rays, and prescribed another pain reliever called nortriptyline.

The pain persisted, and Sepeda filed another sick call request two days after his second visit with Dr. Hanley. He was seen by Nolen, who asked about the problem. Sepeda told him about the origins of the injury, the damage to his legs and feet, and about the two previous visits with Dr. Hanley. Nolen asked Sepeda to remove his shoes and socks. He looked and Sepeda's feet and prescribed nortriptyline.

On February 14, 2011, Sepeda saw Lastrapes about his foot pain. He told her about the discomfort which he suffered from standing or walking. Lastrapes ordered X-rays and told him to continue his medication. The X-rays were taken on February 24, 2011; Sepeda states that these X-rays showed no acute bony or soft tissue damage, but notes that they were taken over four months after he first reported the complaint.

On March 18, 2011, Sepeda states that he was seen by video by a physician's assistant named Kannenberg. He questions how anyone can evaluate an injury through a screen monitor and camera, but says that Kannenberg "acted as if she could discern my foot ailment" and prescribed acetaminophen, another pain reliever, for him.

Sepeda says that on several occasions, he saw Nurse Pierson when updating his medications for asthma or high blood pressure. Each time, he would complain about pain in his left foot. He has asked several times to see a specialist, but has been denied. He complains that he has not been evaluated properly and was not given X-rays promptly, and that the medical providers have not asked TDCJ officials to provide safe access to the top bunk.

Sepeda stated that he was suing Pam Pace, the medical administrator, because he sent her a request to see a specialist and she answered by saying that Sepeda's X-rays were negative. He testified that he was suing Brad Livingston because there were no ladders or stairs, so the only way to get to the top bunk is climb on the toilet or grab the shelf, and the only way down is to jump or

to climb down onto the lower bunk. Warden Catoe, a TDCJ official also present at the hearing, testified under oath that Sepeda was essentially correct; the inmates generally have to climb to the upper bunk using the shelf, and that most people get down by easing themselves to the lower bunk and then stepping to the floor.

When asked how bunk assignments are made, Warden Catoe explained that the classification department reviews the HS-18 (health summary for classification) forms. Some inmates are medically required to get lower bunk passes or One Row passes because of their medical restrictions, so inmates without medical restrictions often are placed into the upper bunks.

Nurse Kelly Maxwell, R.N., a registered nurse also present at the evidentiary hearing, testified that on or around October 18, 2010, Sepeda saw Dr. Hanley, who is in fact an orthopedic specialist. Dr. Hanley ordered X-rays and prescribed medications. On October 27, 2010, the X-ray results showed that Sepeda's feet were within normal limits. Dr. Hanley gave Sepeda a lower bunk pass for six months.

On February 28, 2011, Sepeda's left foot was X-rayed again, and the results were agin within normal limits. Maxwell explained that soft tissue injuries are usually treated with medication.

## Sepeda's Medical Records

A review of Sepeda's medical records shows that on October 8, 2010, he saw the medical department complaining of pain in his right leg from the free-world dog bite. He was prescribed acetaminophen for pain and scheduled to see a medical provider.

Ten days later, on October 18, 2010, Sepeda saw Dr. Hanley with a complaint of right leg pain. The doctor noted no effusion (i.e. joint swelling) and a normal range of motion, and ordered X-rays of Sepeda's right knee. This X-ray showed no recent fractures or acute bony pathology, intact articular relationships, and soft tissues within normal limits.

On November 4, 2010, Sepeda saw Dr. Hanley again, complaining of pain in his right leg. The doctor diagnosed a soft tissue injury secondary to the dog bite and ordered that Sepeda receive a lower bunk pass for six months as well as pain medication.

On November 26, 2010, he went to the medical department with a complaint of pain in his left leg, mentioning the dog bite and a motorcycle wreck, and stating that jumping down from the bunk made it worse. The treatment plan listed is acetaminophen, and Sepeda was to be scheduled to see a medical provider.

On December 1, 2010, Sepeda saw Nolen, who noted a complaint of pain in the right foot and leg with a past history of trauma. Sepeda stated that the top bunk was painful, but he is now on a lower bunk, and that Sepeda had prescriptions for pain medications.

On January 2, 2011, Sepeda was seen in the medical department complaining of right leg and foot pain. He stated that he is on a bottom bunk so that it better, but the medication is not helping. The treatment plan was listed as acetaminophen or ibuprofen, and Sepeda was scheduled to return to the clinic.

Nine days later, on January 11, 2011, Sepeda saw Nurse Pierson, saying that he had a dog bite in January of 2010 and has pain in his leg, and that he wants to get out of his work assignment to the fields because he has trouble breathing. The nurse noted no deformity to the left foot, stating that according to Sepeda, the pain is to the sole just in front of the heel. The treatment plan was a change in Sepeda's medical restrictions, two blood pressure checks a week for four weeks, and blood tests including a complete blood count, a comprehensive metabolic panel, a lipids test, and a hemoglobin test.

On February 2, 2011, Sepeda complained of left foot pain and chest pain. He was scheduled to see a provider for an EKG and prescribed acetaminophen for pain. On March 13, 2011, Sepeda saw Lastrapes with a complaint of foot pain and chest pain. Her examination of his foot showed no clubbing, cyanosis, or edema and an active range of movement, and she ordered a foot X-ray as well as an EKG.

Five days later, Sepeda saw Kannenberg. She noted that his foot exams had been within normal limits and his X-rays were negative, and says "condition discussed." She also ordered acetaminophen. On April 8, Sepeda again complained of left foot pain, for which he was prescribed

acetaminophen. Sepeda had a physical exam on June 7, 2011, at which he voiced no complaints. He made no complaints of foot pain after this date.

Sepeda's HS-18 (health summary for classification) forms show that on August 16, 2010, he had no restrictions on his bunk assignment. On November 4, 2010, this was changed to a lower bunk restriction. On January 2, 2011, an updated HS-18 form shows that Sepeda still had a lower bunk restriction, and restrictions for no exposure to environmental pollutants and no work with chemicals or irritants. His job was listed as a field squad; however, Sepeda testified that during the time he was assigned to world in the fields, his squad was never actually called out to work. On December 8, 2011, an updated HS-18 form showed the same restrictions, including the lower bunk restriction and the two work restrictions; this form lists Sepeda's work assignment as an inside medical squad.

## Legal Standards and Analysis

Sepeda's primary complaint is that the defendant medical personnel were deliberately indifferent to his serious medical needs. The Fifth Circuit has held that deliberate indifference to a convicted inmate's serious medical needs could state a civil rights violation, but a showing of nothing more than negligence does not. Norton v. Dimazana, 122 F.3d 286, 291 (5th Cir. 1997); Jackson v. Cain, 864 F.2d 1235, 1246 (5th Cir. 1989). However, simple disagreement with the medical treatment received or a complaint that the treatment received has been unsuccessful is insufficient to set forth a constitutional violation. Johnson v. Treen, 759 F.2d 1236, 1238 (5th Cir. 1985); Norton, 122 F.3d at 293.

Furthermore, malpractice alone is not grounds for a constitutional claim. Varnado v. Collins, 920 F.2d 320, 321 (5th Cir. 1991). Negligent or mistaken medical treatment or judgment does not implicate the Eighth Amendment and does not provide the basis for a civil rights action. Graves v. Hampton, 1 F.3d 315, 319-20 (5th Cir. 1993). The Fifth Circuit has held that the fact that medical care given is not the best that money can buy, and the fact that a dose of medication may occasionally be forgotten, does not amount to deliberate indifference to serious medical needs. Mayweather v. Foti, 958 F.2d 91 (5th Cir. 1992).

More pertinently, the Fifth Circuit has held that an inmate who had been examined by medical personnel on numerous occasions failed to set forth a valid showing of deliberate indifference to serious medical needs. Spears v. McCotter, 766 F.2d 179, 181 (5th Cir. 1985). It should be noted in this regard that medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference to serious medical needs. Banuelos v. McFarland, 41 F.3d 232, 235 (5th Cir. 1995).

In Domino v. TDCJ-ID, 239 F.3d 752 (5th Cir. 2001), a inmate who was a psychiatric patient expressed suicidal ideations and the psychiatrist returned him to his cell after a five-minute examination; the inmate committed suicide two and a half hours later. The Fifth Circuit, in reversing a denial of summary judgment by the district court, stated as follows:

> Deliberate indifference is an extremely high standard to meet. It is indisputable that an incorrect diagnosis by prison medical personnel does not suffice to state a claim for deliberate indifference. Johnson v. Treen, 759 F.2d 1236, 1238 (5th Cir. 1985). Rather, the plaintiff must show that the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." Id. Furthermore, the decision whether to provide additional medical treatment "is a classic example of a matter for medical judgment." Estelle v. Gamble, 429 U.S. 97, 107 (1972). And, "the failure to alleviate a significant risk that [the official] should have perceived, but did not," is insufficient to show deliberate indifference. Farmer v. Brennan, 511 U.S. 825, 838 (1994).

Domino, 239 F.3d at 756; *see also* Stewart v. Murphy, 174 F.3d 530, 534 (5th Cir. 1999).

In this case, Sepeda's testimony, as well as the medical records which do not contradict this testimony, plainly show that Sepeda received a substantial quantum of medical care. His complaints of foot pain were routinely addressed by the multiple medical providers, including Dr. Hanley, who held a specialty certification in orthopedic surgery. Sepeda concedes and the medical records confirm that he received a lower bunk pass within a month after he saw Dr. Hanley for the first time. His knee and foot were X-rayed, and these X-rays proved normal. Sepeda was prescribed pain medication as well as being given a lower bunk pass. The fact that the medical care which he received was not as effective as he would have liked in alleviating his pain, and the fact that he was seen on one occasion on video instead of in person, do not show that any of the medical personnel

named in the lawsuit refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." Sepeda's claim that he suffered deliberate indifference to his serious medical needs is without merit.

The fact that Pace did not respond to his request in the way that he wanted also does not set out a constitutional claim. The Fifth Circuit has held that inmates do not have a constitutionally protected liberty interest in having grievances or requests resolved to their satisfaction, and so there is no violation of due process when prison officials fail to do so. Geiger v. Jowers, 404 F.3d 371, 373-74 (5th Cir. 2005). Sepeda had no constitutional right to see a specialist and has not shown that the failure to schedule an appointment with a specialist amounted to deliberate indifference to his serious medical needs, particularly in light of the fact that Dr. Hanley was an orthopedic specialist. Sepeda's claim against Pace is without merit.

Sepeda also sues TDCJ-CID Director Brad Livingston over the fact that the top bunks did not have ladders or stairs. The courts have held that the Constitution does not require that top bunks be provided with ladders. *See, e.g.*, Grant v. Aubrey Cole Law Enforcement Center, civil action no. 1:09cv772, 2012 WL 3112060 (E.D.Tex., June 26, 2012, *Report adopted at* 2012 WL 3115036 (E.D.Tex., July 31, 2012, no appeal taken) (stating that "the Constitution does not require ladders for bunk beds"); Hawthorne v. Cain, civil action no. 10-0528, 2011 WL 2973690 (M.D.La., June 8, 2011, *Report adopted at* 2011 WL 2941308 (M.D.La., July 21, 2011, no appeal taken) (failure of prison officials to equip the bunk with a ladder "simply does not amount to the deprivation of a minimal civilized measure of life's necessities"); Connolly v. County of Suffolk, 533 F.Supp.2d 236, 241 (D.Mass. 2008, no appeal taken) (same). In Armstrong v. Terrebone Parish Sheriff, civil action no. 06-573, 2006 WL 1968887 (E.D.La., June 6, 2006, no appeal taken), the Eastern District of Louisiana concluded that a swivel chair was a reasonable means by which an inmate could get into the top bunk, noting that "the Constitution requires neither ladders for bunk beds nor call boxes to remedy the fall experienced by the plaintiff."

Similarly, in the present case, Sepeda fails to show that the failure to provide ladders or stairs as a means of ready access to the top bunk amounts to a constitutional violation. The Fifth Circuit has explained that the indicia of confinement constituting cruel and unusual punishment include wanton and unnecessary infliction of pain, conditions grossly disproportionate to the severity of the crime warranting imprisonment, and the deprivation of the minimal civilized measures of life's necessities. Wilson v. Lynaugh, 878 F.2d 846, 848 (5th Cir.), *cert. denied* 493 U.S. 969 (1989). The Supreme Court has held, however, that to the extent that prison conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society. Rhodes v. Chapman, 452 U.S. 337, 346-7 (1981). However, any Eighth Amendment analysis must look to the evolving standards of decency that mark the progress of a maturing society, but cautioned that the standards are derived from objective factors. Rhodes, 452 U.S. at 346. In compliance with the Supreme Court's opinion, the Fifth Circuit has stated that the Eighth Amendment does not afford protection against mere discomfort or inconvenience. Wilson, 878 F.2d at 849.

As stated above, the failure to provide a ladder does not amount to the deprivation of the minimal standards of life's necessities. Nor has Sepeda shown that this failure amounts to deliberate indifference to his safety. *See* Farmer v. Brennan, 511 U.S. 825, 837-38, 114 S.Ct. 1970, 1979 (1994); Reeves v. Collins, 27 F.3d 174, 176 (5th Cir. 1994). Sepeda's claim against the Director of TDCJ-CID for failure to provide ladders in the cells is without merit.

## Conclusion

28 U.S.C. §1915A requires that as soon as practicable, district courts must review complaints wherein prisoners seek redress from governmental entities or their employees. Section 1915A(b) requires that upon review, the court shall identify cognizable claims or dismiss the complaint or any portion thereof if the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.

The term "frivolous" means that a complaint lacks an arguable basis in law or fact; a complaint is legally frivolous when it is based upon an indisputably meritless legal theory. Neitzke

8

v. Williams, 490 U.S. 319, 325-7 (1989). A complaint fails to state a claim upon which relief may be granted if as a matter of law, it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations. Neitzke v. Williams, 490 U.S. 319, 327, (1989), *citing* Hishon v. King & Spalding, 467 U.S. 69, 73 (1984); *see also* Blackburn v. City of Marshall, 42 F.3d 925, 931 (5th Cir. 1995).

In this case, Sepeda's complaint lacks any arguable basis in law and fails to state a claim upon which relief may be granted. Consequently, this lawsuit may be dismissed under 28 U.S.C. §1915A(b). *See generally* Thompson v. Patteson, 985 F.2d 202 (5th Cir. 1993). It is accordingly

ORDERED that the above-styled civil action be and hereby is DISMISSED with prejudice as frivolous and for failure to state a claim upon which relief may be granted. 28 U.S.C. §1915A. It is further

ORDERED that the Clerk shall send a copy of this order to the Administrator of the Strikes List for the Eastern District of Texas. Finally, it is

ORDERED that any and all motions which may be pending in this civil action are hereby DENIED.

So **ORDERED** and **SIGNED** this **14** day of **March, 2013.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE